UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DARIAN JOHNSEY**, *et al*, } <br> } <br> Plaintiffs, } <br> } <br> v. } <br> } <br> **BAL TK, LLC**, *d/b/a* **THE TILTED KILT**, } <br> } <br> Defendants. } | Case No.: 2:18-CV-00643-MHH |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this action bring claims under the Fair Labor Standards Act against defendant BAL TK, LLC. The plaintiffs ask the Court to certify an opt-in class of employees and to approve notice to potential opt-in plaintiffs, so that the plaintiffs may pursue their FLSA claims in a collective action. (Doc. 20). The plaintiffs, who were servers at BAL TK's restaurant, assert that BAL TK required them to work off the clock and to purchase uniforms with their own money. BAL TK opposes conditional certification of an opt-in class. (Doc. 25). For the reasons explained below, the Court grants the plaintiffs' motion.

1

## I. FACTUAL BACKGROUND

BAL TK operated a restaurant in Birmingham, Alabama under the trade name "The Tilted Kilt." (Doc. 7, pp. 4-5, ¶ 16; Doc. 21, pp. 23, 28, & 33 at ¶ 1).[1] The named plaintiffs -- Ms. Johnsey, Ms. Hilton, and Ms. Wagner -- worked at the Tilted Kilt restaurant from July 2016 to November 2016, May 2016 to October 2016, and July 2016 to May 2017, respectively. (Doc. 21, pp. 23, 28, & 33 at ¶ 1). The plaintiffs were servers at the restaurant and were known as "Kilt Girls." (Doc. 21, pp. 23, 28, & 33 at ¶ 2).[2] As Kilt Girls, the plaintiffs were required to wear a uniform consisting of "a required bra, blouse, kilt, socks, and shoes." (Doc. 21, pp. 24, 29, & 34 at ¶ 5).

The plaintiffs allege two FLSA violations. First, the plaintiffs contend that BAL TK required them to work before and after their scheduled shifts without pay. (Doc. 7, pp. 6-7, ¶¶ 25, 26; pp. 8-9, ¶¶ 32-33; Doc. 21, pp. 24, 29, & 34 at ¶ 8). The plaintiffs assert that they had to appear for their shift 30 minutes before its scheduled start to change into their uniforms, adjust their hair and makeup to appear "camera ready," and attend pre-shift meetings. (Doc. 7, pp. 6-7, ¶ 25; pp. 8-9, ¶ 33; Doc. 21, pp. 24, 29, & 34 at ¶ 5). Because BAL TK did not permit the plaintiffs to wear their uniforms outside of the restaurant, the plaintiffs had to

---

[1] BAL TK ceased operations in May of 2017. (Doc. 7, p. 1, ¶ 1).

[2] Ms. Johnsey, Ms. Hilton, and Ms. Wagner occasionally assisted or worked as bartenders. (Doc. 21, p. 3).

change out of their uniforms before leaving the premises. (Doc. 7, pp. 8-9, ¶¶ 31, 33; Doc. 21, pp. 25, 30, & 35 at ¶ 13). The plaintiffs had to clock out at the end of their shifts before changing out of their uniforms, which the plaintiffs allege added 10 minutes of unpaid time to each shift. (Doc. 7, pp. 8-9, ¶¶ 31, 33; Doc. 21, pp. 25, 30, & 35 at ¶ 13).

Second, the plaintiffs contend that they had to buy their own uniforms, which brought their wages below minimum wage for all hours worked. (Doc. 7, p. 2, ¶ 5; pp. 11-12 ¶¶ 47-49; Doc. 21, pp. 24, 29, & 34 at ¶ 9). The uniforms cost approximately $100, and the cost was deducted from the plaintiffs' initial check. (Doc. 7, pp. 11-12, ¶ 48; Doc. 21, p. 24, 29, & 34 at ¶ 9). The plaintiffs also had to pay for replacement uniforms when their uniforms became worn. (Doc. 7, pp. 7-8, ¶ 29; Doc. 21, pp. 24, 29, & 34 at ¶ 10). On holidays, the plaintiffs had to wear festive outfits and accessories, which the plaintiffs had to purchase with their own money. (Doc. 7, p. 2, ¶ 5; pp. 7-8, ¶ 29; Doc. 21, pp. 24-25, 29-30, & 34-35 at ¶¶ 11-12). The plaintiffs assert that they "believe other Kilt Girls would also be interested in pursuing claims if made aware of the possibility of proceeding as a group of Kilt Girls." (Doc. 21, pp. 25, 30, & 35 at ¶ 16). [3]

---

[3] Through declarations, the plaintiffs have offered evidence to support the allegations in their amended complaint. The record citations in the preceding paragraphs include citations to the amended complaint and to the plaintiffs' declarations. BAL TK argues that the Court should not rely on the plaintiffs' declarations because the declarations are "virtually identical" and inaccurate. (Doc. 25, pp. 9-11). The plaintiffs held identical titles, performed identical duties, and were subject to identical policies. The similarities in the plaintiffs' declarations make sense.

Based on these alleged FLSA violations, the plaintiffs seek to represent an opt-in class consisting of:

> All former Tipped Employees who have worked for Defendant at The Tilted Kilt in Birmingham, Alabama at 15 Perimeter Park So., within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b).

(Doc. 21, p. 2).[4]

## II. DISCUSSION

The FLSA enables an employee to bring a collective action on behalf of similarly situated employees against an employer who allegedly has violated the FLSA. *See* 29 U.S.C. § 216(b). The decision to certify an FLSA class rests within the discretion of a district court. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). If the district court deems conditional certification of the proposed class appropriate, then the court also may authorize notice to other

---

The declarations, though "extremely similar," (Doc. 21, p. 2, n. 1), are "more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores." *Morgan*, 551 F.3d at 1261 (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)). The Court may rely on the assertions in the declarations at this stage of the certification process. *Morgan*, 551 F.3d at 1259.

[4] In their reply in support of their motion for conditional certification, the plaintiffs state that "[t]here is no question that the First Amended Complaint applies to those female employees who worked at Tilted Kilt as female bartenders and waitresses, defined by Defendant as 'Kilt Girls.' . . . If Defendant is comfortable using the term 'Kilt Girls' to define a class of female waitresses and bartenders, Plaintiffs would consent to a modification of the notice to clarify the class of persons as "All former Tipped employees who worked as waitresses and female bartenders known as 'Kilt Girls' at the Tilted Kilt in Birmingham, Alabama at 15 Perimeter Park So., from [three years from the date of notice] [sic] to May of 2017 and elect to opt into this action pursuant to 29 U.S.C. § 216(b)." (Doc. 27, pp. 21-22).

potential plaintiffs. *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

In the Eleventh Circuit, certification of an FLSA collective action proceeds in two stages: the conditional certification or notice stage and the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008). At the first stage, before conditionally certifying a collective action, a district court must be satisfied "that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). "The sole consequence of conditional certification is the sending of court-approved written notice to employees, . . . who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

A district court evaluates the limited record at the first stage "'using a fairly lenient standard,'" and the evaluation "'typically results in 'conditional certification' of a representative class.'" *Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)). The defendant initiates the second stage of the certification process by filing a motion for decertification. In the second stage, a district court makes a closer examination of the FLSA class based on a more developed factual record. *Morgan*, 551 F.3d at 1261.

A plaintiff seeking conditional certification must show that there is a reasonable basis for the contention that there are other similarly situated employees. *Morgan*, 551 F.3d at 1260. The FLSA does not define what it means for employees to be similarly situated. *Morgan*, 551 F.3d at 1259. For employees to be similarly situated, they do not have to hold identical positions. *See Dybach*, 942 F.2d at 1567-68; *Morgan*, 551 F.3d at 1260. The similarity required for an FLSA collective action is less demanding than the commonality required for class certification under Federal Rule of Civil Procedure 23. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12.[5]

> Courts in this circuit assess similarity using practical factors like:
>
> (1) whether plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices . . . established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar.

*Pena v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289, 1296 (S.D. Fla. 2014); *see also Hazel v. Alimentation Couche-Tard*, 2017 WL 3676032, at *3 (N.D. Ala. Aug. 25, 2017). These factors serve as guideposts, but "no one factor is dispositive, and the factors taken as a whole are not necessarily determinative of status as similarly

---

[5] *Grayson* is an age discrimination action under the ADEA. 29 U.S.C. § 623. The ADEA "incorporates enforcement provisions of the [FLSA]" and "provides that the ADEA shall be enforced using certain of the powers, remedies, and procedures of the FLSA." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167 (1989).

situated employees." *Alequin v. Darden Restaurants, Inc.*, 2013 WL 3939373, at *4 (S.D. Fla. July 12, 2013) (internal citations omitted).

　　A. <u>Similarly Situated Requirement</u>

The potential members of the proposed opt-in class of Kilt Girls are similarly situated. The Kilt Girls were tipped employees who worked primarily as servers and occasionally as bartenders. (Doc. 21, pp. 23, 28, & 33 at ¶ 2). The plaintiffs shared the same job title (Kilt Girls), worked at the same Tilted Kilt restaurant in Birmingham, Alabama, and were subject to the same uniform and off-the-clock policies. (Doc. 21, pp. 23, 28, & 33 at ¶¶ 1, 2; pp 25, 30, & 35 at ¶ 15).

The alleged FLSA violations occurred during roughly the same timeframe. (Doc. 21, pp. 23, 28, & 33 at ¶ 1). The FLSA limits the plaintiffs' claims to violations that occurred within three years of the filing of this lawsuit.[6] BAL TK argues that the opt-in class should be limited to the period from May 2016 to May 2017, the dates that the named plaintiffs worked at the Tilted Kilt. The plaintiffs contend that the class period should begin on January 1, 2016, the date on which the Tilted Kilt opened. Because potential opt-in plaintiffs who worked as Kilt

---

[6] The statute of limitations for non-willful violations of the FLSA is two years. 29 U.S.C. § 266(a). The plaintiffs contend that the defendants' alleged violations were willful and, therefore, are governed by a three-year statute of limitations. Given the allegations of willful violations, it is appropriate at this juncture to allow a three-year class period for opt-in plaintiffs. The class period may narrow to two years at the decertification stage if there is insufficient evidence to support a finding that the defendants willfully violated the FLSA.

7

Girls between January 2016 and May 2016 are similarly situated to the named plaintiffs, the class period shall begin on January 1, 2016.

BAL TK contends that the proposed class members are not substantially similar because their claims are fact-specific and individualized. (Doc. 25, pp. 5-8). BAL TK argues:

> Each plaintiff will need to establish: (1) when she was required to purchase each item that comprised the "uniform," (2) how much she paid for each item, (3) whether she purchased each item from BAL TK or a third-party, (4) whether each item needed to be exclusively used for work purposes, and (5) whether the cost of each item was actually sufficient to drop her wage in that pay period below the applicable minimum . . . .

(Doc. 25, p. 7). The argument requires too much of the plaintiffs at the notice stage and ignores the fact that certain issues may be suitable for class treatment. BAL TK's reliance on *Saxton v. Title Max of Alabama*, 431 F. Supp. 2d 1185 (N.D. Ala. 2006), is misplaced. Unlike the plaintiffs in *Saxton*, the plaintiffs here have provided evidence of FLSA violations, and unlike the defendant in *Saxton*, the defendant here has not produced overwhelming evidence that undermines the plaintiffs' claims. *Saxton*, 431 F. Supp. 2d at 1188. Moreover, the plaintiffs in *Saxton* spanned three states and multiple stores, whereas the plaintiffs here complain of wage violations in a single restaurant. *Saxton*, 431 F. Supp. 2d at 1186. Accordingly, the Court is satisfied that the named plaintiffs and potential opt-in plaintiffs are similarly situated.

B. Interest of Other Potential Plaintiffs

BAL TK contends that the plaintiffs have not established "that there is anyone else who wishes to join the collective action." (Doc. 25, p. 11). BAL TK notes that the named plaintiffs have not submitted declarations from potential plaintiffs or a list of other Kilt Girls who want to participate in this action. In their declarations, the plaintiffs state that they "believe" that other Kilt Girls will want to participate in this action. The plaintiffs explain that all Kilt Girls were paid in the same way, performed the same duties, and worked similar hours in a given week, all of which supports a finding that there likely are other Kilt Girls who would opt to join this action. "[C]ourts within this circuit have determined that evidence of a common payroll policy or scheme is sufficient to establish[] there [are] other employees desiring to opt in . . . ." *Santiago v. Mid-South Painting, Inc.*, 2011 WL 3418252, at *4 (S.D. Fla. Aug. 3, 2011) (internal citations and quotations omitted). Accordingly, the plaintiffs have demonstrated that there are other Kilt Girls who will be interested in participating in this litigation.

C. BAL TK's Objections to the Requested Service Methods

BAL TK argues that if the Court certifies a conditional class, then the Court should not accept the plaintiffs' proposed notice because the notice, in BAL TK's view, is deficient. (Doc. 25, pp. 17-20). The plaintiffs have agreed to revise their notice to address some of BAL TK's concerns. (Doc. 27, p. 25 ("Plaintiffs

withdraw the request for social security information."); Doc. 27, p. 24 ("Plaintiffs have no objection to a statement in the Notice informing potential opt-ins that they may hire their own, additional counsel.")). The Court will direct the parties to meet and confer and submit a proposed revised opt-in class notice.

As for the method of providing notice to the proposed class, the plaintiffs seek to bypass traditional methods and issue notice electronically through text messages and emails. According to the plaintiffs, "the only reliable way to contact each other was by cell phone, or more specifically, text message . . . we moved into new apartments fairly regularly, and changed addresses." (Doc. 21, pp. 25, 30, & 35 at ¶¶ 17-18). The plaintiffs also ask for leave to send reminder notices, arguing that Kilt Girls are "prone to miss unfamiliar texts or emails." (Doc. 27, p. 28). BAL TK opposes both requests, arguing that the plaintiffs have not sufficiently demonstrated that first-class mail will not suffice and that reminder notices "could be perceived by potential opt-in plaintiffs as court-endorsed encouragement to pursue litigation." (Doc. 25, p. 23).

Currently, the record does not warrant service of notice by non-traditional means. If, after a good faith effort to provide service by first-class mail, the plaintiffs establish a record that supports their contention that notice by first-class mail is insufficient and electronic notice is warranted, the Court will reconsider the

electronic option on that evidentiary record. For the same reason, the plaintiffs' request to send reminder notices is premature.

## III. CONCLUSION

For the reasons stated above, the Court conditionally certifies an FLSA class comprised of all former tipped employees known as Kilt Girls who worked as waitresses and bartenders at the Tilted Kilt in Birmingham, Alabama at Perimeter Park So. from January 2016 to May 2017. The Court orders BAL TK to provide the plaintiffs with the names and last-known addresses of potential opt-in plaintiffs. The plaintiffs must revise their proposed notice in light of the findings in this order. The Court directs the plaintiffs to confer with BAL TK to draft a mutually agreeable notice for the Court's approval.

**DONE** and **ORDERED** this August 23, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE